## NORMAN L. LONGVAL *vs.* SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT.

Suffolk. June 12, 2001. - August 8, 2001.

Present: MARSHALL, C.J., IRELAND, SOSMAN, & CORDY, JJ.

*Imprisonment,* Access to courts. *Constitutional Law,* Equal protection of laws, Imprisonment. *Practice, Civil,* Appeal, Costs. *Statute,* Construction.

Discussion of the development of the law governing prisoner litigation, including the Federal Prisoner Litigation Reform Act of 1995. [718-720]

General Laws c. 261, §§ 27A and 29, which require inmates to submit documentation establishing indigence and to pay court filing fees in civil cases, do not violate inmates' rights to have access to the courts or to equal protection under either the State or Federal Constitution. [721-723]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on August 1, 2000.

The case was heard by *Cowin,* J.

The case was submitted on briefs.

*Ginny Sinkel,* Assistant Attorney General, for the defendant.

*Norman L. Longval,* pro se.

IRELAND, J. This is an appeal from a single justice's decision denying the plaintiff's request for declaratory and injunctive relief regarding statutory provisions requiring inmates to pay court filing fees in civil cases. See G. L. c. 261, §§ 27A, 29. The plaintiff, Norman L. Longval, claims that these enactments, among others, unconstitutionally burden both his right to access the courts and his right to equal protection because they treat inmates in a "different and more onerous" manner than other citizens. Following the lead of the Federal courts that have assessed similar arguments, we affirm the single justice's denial of relief.

1. *Development of Law Governing Prisoner Litigation.*

In November, 1999, the Legislature enacted a series of statutes designed partially to stem "frivolous" civil litigation by

prisoners. In particular, the Legislature created G. L. c. 127, §§ 38E-38H, inserted by St. 1999, c. 127, § 133 (establishing grievance procedure for inmate complaints); amended G. L. c. 127, § 129D, through St. 1999, c. 127, § 134 (allowing for reduction in "[g]ood conduct credit" where prisoner files frivolous and bad faith claim "in order to abuse the judicial process"); amended G. L. c. 231, § 6F, through St. 1999, c. 127, § 179 (creating procedural framework to determine whether inmate's claim is frivolous and, if so, whether sanction is appropriate); and amended G. L. c. 261, § 27A, through St. 1999, c. 127, §§ 180, 181 (setting forth filing fee payment plan for "[i]ndigent" inmates). The challenged provisions are modeled after, but are more expansive than, the Federal Prisoner Litigation Reform Act of 1995 (PLRA), an act that Congress passed "with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims."[1] *Murray* v. *Dosal*, 150 F.3d 814, 816 (8th Cir. 1998), cert. denied, 526 U.S. 1070 (1999), quoting *Lyon* v. *Krol*, 127 F.3d 763, 764 (8th Cir. 1997). See *Hampton* v. *Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). "The PLRA 'refashioned the procedures prisoners must observe when seeking to proceed [in forma pauperis] in civil actions.' " *Murray* v. *Dosal, supra*, quoting *Mitchell* v. *Farcass*, 112 F.3d 1483, 1487 (11th Cir. 1997). Specifically, the PLRA (1) authorized Federal courts to dismiss frivolous civil actions commenced by prisoners; (2) empowered courts to impose partial filing fees on prisoners able to pay; (3) limited the amount of attorney's fees that prisoners can collect pursuant to 42 U.S.C. § 1988 (1994); (4) permitted defendants named in actions filed by prisoners to waive the right to reply to civil complaints without admitting any of the allegations set forth within; and (5) required prisoners to exhaust administrative remedies before seeking judicial relief. 28 U.S.C.

---

[1] Unlike G. L. c. 231, § 6F, as amended through St. 1999, c. 127, § 179, neither the Federal Prisoner Litigation Reform Act of 1995 (PLRA) nor the various State statutes modeled after the Federal act provide that prisoners who file lawsuits that are determined to be frivolous may be penalized by a loss of good conduct credit. See notes 2, 7, *infra.*

§ 1915 (1994 & Supp. V 1999). 42 U.S.C. § 1997e (1994 & Supp. V 1999).[2]

2. *Statement of Facts.*

On March 27, 2000, the plaintiff moved to waive filing fees and to docket certain appeals in an unrelated case. Absent the necessary financial information, the Appeals Court could not take action on either request and promptly responded, "G. L. c. 261, [§] 29, requires that any inmate seeking to docket an appeal must file a completed affidavit of indigency in support of a motion to waive fees. . . . In addition to the completed affidavit form you are also required to submit a current statement of the past six months of your inmate canteen and savings accounts verified by the institution's treasurer."[3] After encountering difficulty obtaining the requested information, the plaintiff

[2]In addition to Massachusetts, other States followed Congress's lead and enacted legislation bearing on prisoner litigation. See, e.g., Alaska Stat. § 09. 19.010 (1995) (imposing limits on prisoners' ability to receive filing fee exemption). Such statutes have repeatedly survived constitutional challenges. See *Beck* v. *Symington*, 972 F. Supp. 532, 533-536 (D. Ariz. 1997); *George* v. *Alaska*, 944 P.2d 1181, 1191 (Alaska Ct. App. 1997) (sustaining filing fee provision); *Rash* v. *Anderson*, 80 Ohio St. 3d 349, 351 (1997) (upholding filing requirements for indigent inmates); *State ex rel. Tayr Kilaab al Ghashiyah (Khan)* v. *Sullivan*, 235 Wis. 2d 260, 267-272 (Ct. App. 2000) (provision requiring prepayment of filing fee does not unconstitutionally infringe on either right to access courts or equal protection).

[3]Inserted by St. 1999, c. 127, § 182, G. L. c. 261, § 29, requires an inmate who has commenced a civil action against an agency, official, or employee of the Commonwealth and requested a waiver of the attendant filing fees and costs, to submit certain documentation. In addition to a signed affidavit reporting the "assets including, but not limited to, cash, monies in bank accounts, real property, other investments and all assets of a spouse to which the inmate has legal access; income received in the past six months and income expected to be received in the next six months," G. L. c. 261, § 29, requires a prison official to file a "copy of a current account statement of the inmate's account and a copy of the inmate's activity sheet for the preceding six months."

Pursuant to G. L. c. 261, § 29, once the required information is filed, "[t]he court shall order the inmate to pay, as a partial payment of any filing fees and court costs, 20 per cent of the preceding six months' average balance in the inmate's account and, thereafter, monthly payments of 10 per cent of the average monthly balance in the inmate's account, until all such fees are paid, provided that the payment amount to be drawn from the inmate's account is equal to or greater than $10." This order need not be issued if the court "finds that the inmate is incapable of making payments under such a plan or if the court determines, at any time, that such order imposes an undue administrative burden upon the court."

filed an action in the Superior Court challenging the constitutionality of G. L. c. 261, § 29, on the ground that it treats inmates differently and more onerously than the population at large. After a single justice denied the plaintiff's subsequent petition without a hearing, he appealed to the full court.[4] See *Rushworth* v. *Registrar of Motor Vehicles*, 413 Mass. 265, 268 n.4 (1992) (where government acts under allegedly unconstitutional statute, "it is appropriate for the courts, as soon as reasonably possible, to resolve challenges to the validity of the statute").

3. *Indigency Determination and Filing Fees.*

The plaintiff claims that the amendments to G. L. c. 261, §§ 27A and 29, that require him, as an inmate, to submit documentation establishing indigence and to pay court filing fees, violate his right to (1) access the courts and (2) equal protection under the laws. From the outset, we note that the plaintiff does not suggest that the Massachusetts constitutional provisions afford him any greater rights or protections than the comparable Federal constitutional provisions. "Like the Supreme Court of the United States, this court has upheld statutory schemes that impose additional burdens on a particular class of litigants only if such schemes are rationally related to a legitimate legislative purpose." *Murphy* v. *Commissioner of the Dep't of Indus. Accs.*, 415 Mass. 218, 229 (1993). Mindful of the "heavy burden of overcoming the presumption of constitutionality," we consider whether a "rational basis to a legitimate State interest" underlies the challenged laws. *Id.* at 232, 233.

Although neither this court nor the Appeals Court has considered the constitutionality of these provisions enacted by St. 1999, c. 127, Federal courts have consistently upheld comparable components of the PLRA on the grounds that they do not violate an inmate's right to access the courts. See *Murray* v. *Dosal*, *supra* at 817-818 (imposing filing fees on indigent prisoner did not unconstitutionally burden prisoner's access to courts); *Tucker* v. *Branker*, 142 F.3d 1294, 1297 (D.C. Cir.

[4]The plaintiff requested the single justice to (1) declare unconstitutional the recently enacted prisoner litigation statutes, i.e., G. L. c. 231, § 6F; G. L. c. 261, § 27A; G. L. c. 261, § 27H; G. L. c. 127, §§ 38F-38H; and G. L. c. 127, § 129D (the good time credit provision); (2) enjoin enforcement of such provisions; (3) appoint counsel and award attorney's fees; and (4) award compensatory and punitive damages.

1998) (joining "five other circuits in concluding that" PLRA filing fee provisions do not deny prisoners effective access to courts); *Roller* v. *Gunn*, 107 F.3d 227, 231-232 (4th Cir.), cert. denied, 522 U.S. 874 (1997) (provisions merely require prisoners to make same economic decisions about filing lawsuits as others).[5]

Many of the same Federal courts similarly have rejected equal protection challenges to the fee provisions of the PLRA because (1) neither prisoners nor indigents constitute a suspect class; (2) the provisions of the PLRA do not implicate fundamental rights thereby necessitating strict scrutiny; or (3) the provisions of the PLRA are rationally related to the legitimate governmental interest of deterring frivolous prisoner suits. See *Murray* v. *Dosal, supra* at 818; *Tucker* v. *Branker, supra* at 1300; *Roller* v. *Gunn, supra* at 233-234; *Hampton* v. *Hobbs, supra* at 1286-1287. See also *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 649 (1977) (classification is integral part of legislative task and will not be interfered with by judicial bodies unless distinctions drawn by enactment are arbitrary or irrational, or result in invidious discrimination). This court has expressed similar sentiments as well. See *Underwood* v. *Appeals Court*, 427 Mass. 1012, 1013 (1998) ("[r]equiring litigants to pay a reasonably reduced filing fee, set within their limited financial means, serves the important dual purpose of providing equal access to the courts while simultaneously screening out frivolous claims").

Given the Federal precedent rejecting similar constitutional challenges to similar legislative enactments, we find the challenged provisions constitutional. Cf. *Scaccia* v. *State Ethics Comm'n*, 431 Mass. 351, 354-355 (2000) (recognizing that the court will "look to Federal law for guidance in construing" a Massachusetts statute that is similar to Federal statute). The provisions challenged by the plaintiff, like those set forth in the PLRA, only require the plaintiff to pay a filing fee if he has

---

[5]In *Lumbert* v. *Illinois Dep't of Corrections*, 827 F.2d 257 (7th Cir. 1987), the court affirmed a pre-PLRA order requiring inmates to pay partial filing fees. *Id.* at 260. In reaching its conclusion, the court held that fee requirement did not unconstitutionally burden inmates' right to access the courts and was not inconsistent with the Supreme Court's holding that litigants need not be totally destitute to qualify for indigent status. *Id.*

funds in his prison account — the provisions do not require an inmate to pay if he has no funds. G. L. c. 261, § 29 (*d*) (2) (partial payment of filing fee applies unless court "finds that the inmate is incapable of making payments under such a plan"). Where, as here, the statute does not pertain to a suspect class, see *Hastings* v. *Commissioner of Correction*, 424 Mass. 46, 53 (1997) (prisoners not inherently suspect classification), involves a right, i.e., *free* access to the courts, that is not fundamental, see *Cacicio* v. *Secretary of Pub. Safety*, 422 Mass. 764, 773 (1996), and is rationally related to achieving its purpose, it passes constitutional muster.

4. *Other Statutory Provisions.*

The plaintiff also attacks the constitutionality of two other recently amended statutory provisions governing inmate suits. We decline his invitation to consider both G. L. c. 127, §§ 38E-38H,[6] and G. L. c. 231, § 6F,[7] until it is raised by a litigant who has the requisite standing. Because the plaintiff has not suffered

---

[6]General Laws c. 127, § 38E, provides, in pertinent part: "(*a*) The commissioner [of correction] shall promulgate regulations to establish a fair, impartial, speedy and effective system for the resolution of grievances filed against the department . . . by inmates." The enactment speaks generally as to the functions and requirements of the grievance procedure, but allocates the particulars to the commissioner.

[7]General Laws c. 231, § 6F, as amended through St. 1999, c. 127, § 179, provides, in relevant part:

> "Upon receiving an inmate's complaint and affidavit of indigency, the court may, at any time, upon motion or sua sponte: (1) dismiss a claim or any action without a hearing if satisfied that the claim or action is frivolous or in bad faith; or (2) conduct a hearing presided over by the court or an appointed master, which shall be held telephonically unless the court finds that a hearing in court is necessary, to determine whether the inmate's action is frivolous and in bad faith.

> "If the court finds that the claim or action is frivolous or in bad faith, the court shall dismiss the claim or action but if, after hearing, the court finds that the claim is both frivolous and in bad faith in order to abuse the judicial process, the court shall, in addition to dismissing such claim or action, order that the inmate lose up to 60 days of good conduct credit earned or to be earned pursuant to section 129C or 129D of chapter 127.

> "If the court finds at any time that the inmate has repeatedly abused the integrity of the judicial system through frivolous filings, the court may order that the inmate be barred from filing future actions without

any harm as a result of either enactment, he lacks standing to press his claim. See *Kusy* v. *Millbury*, 417 Mass. 765, 770 n.8 (1994), quoting *Pratt* v. *Boston*, 396 Mass. 37, 42 (1985) ("only persons who have themselves suffered, or who are in danger of suffering, legal harm can compel the courts to assume the difficult and delicate duty of passing upon the validity of the acts of [another] branch of government").[8]

For these reasons, the single justice's judgment is affirmed.

*So ordered.*

---

leave of court. In determining whether a claim or action is frivolous or in bad faith, the court may consider several factors including, but not limited to, the following:— (a) whether the claim or action has no arguable basis in law or in fact; (b) the claim or action is substantially similar to a previous claim in that it is brought by and against the same parties and in that the claim arises from the same operative facts of the previous claim.

"No finding shall be made that a claim or action is frivolous or in bad faith solely because a novel or unusual argument or principle of law was advanced in support thereof."

[8]With regard to G. L. c. 127, § 38E, the plaintiff concedes that the enacted grievance procedure "is not per se under challenge." Absent any indication that the plaintiff ever sought to avail himself of the enumerated procedures, the matter is not properly before us. See *Doe* v. *Doe*, 377 Mass. 272, 280 (1979) (expressing no opinion on matter "not properly before us on the present record").

Likewise, with regard to G. L. c. 231, § 6F, the plaintiff's claim has not been declared frivolous or in bad faith. See note 7, *supra*. The plaintiff's claim has also not triggered the provision of that statute authorizing the loss of good conduct credit where a plaintiff has filed a claim in bad faith in order to abuse the judicial process. See *id.* Because neither of those provisions of G. L. c. 231, § 6F, is at issue in this case, we express no view concerning their constitutionality.