COMMONWEALTH *vs.* MARCUS DE'AMICIS.

Suffolk. October 1, 2007. - December 13, 2007.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Statute,* Construction. *Imprisonment,* Access to courts. *Practice, Civil,* Appeal. *Words,* "Action," "Appeal," "Indigent."

Discussion of G. L. c. 261, §§ 27A-27G and 29, the statutory scheme governing requests by indigent individuals for, among other things, the waiver of certain costs and fees incident to civil and criminal litigation, and discussion of the more rigorous standards for determining the indigency of an inmate requesting such a waiver. [273-275]

This court concluded that the provisions of G. L. c. 261, § 29, which establish rigorous standards for determining whether an inmate is indigent for purposes of waiving certain litigation costs and fees in an "action" brought by the inmate, did not apply to an appeal by an inmate from the Commonwealth's petition to commit the inmate to a treatment center as a sexually dangerous person. [275-277]

This court ordered the dismissal of an inmate's appeal from the denial, by a single justice of the Appeals Court, of the inmate's request for a fee waiver on the basis of indigency, where the inmate failed to file his appeal within the seven-day period provided by G. L. c. 261, § 27D. [277-280]

PETITION filed in the Superior Court Department on October 6, 2004.

A motion to waive the entry fee for appeal, filed on February 16, 2007, was considered in the Appeals Court by *Fernande R.V. Duffly,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

*Benjamin S. Halasz,* Assistant District Attorney, for the Commonwealth.

CORDY, J. Having been adjudged and committed as a sexually dangerous person under G. L. c. 123A, Marcus De'Amicis filed a motion in the Appeals Court to enter his appeal without the

payment of entry fees on the basis of indigency. A single justice of that court denied the motion, apparently concluding that De'Amicis did not meet the more onerous indigency requirement applicable to an "inmate." G. L. c. 261, §§ 27A, 29.[1] See *Commonwealth* v. *Clark,* 67 Mass. App. Ct. 832, 834-835 n.6 (2006) (suggesting in dicta that inmate appealing commitment as sexually dangerous person must follow procedure in G. L. c. 261, § 29, to obtain fee waiver). De'Amicis thereafter filed an appeal from the denial of his motion. We granted his application for direct appellate review.

On appeal, De'Amicis contends that the provisions of G. L. c. 261, § 29, do not apply, and were never intended to apply, to individuals who are appealing from their commitments to the treatment center at the Massachusetts Correctional Institution at Bridgewater (treatment center) as sexually dangerous persons. He also contends that to apply the provisions of § 29 in these circumstances would be unconstitutional. See *M.L.B.* v. *S.L.J.,* 519 U.S. 102, 124 (1996) (State court costs that prevent indigent mother from appealing from parental termination order violates Federal Constitution because proceeding quasi criminal in nature). We conclude, as a matter of statutory interpretation, that the requirements of § 29 do not apply to an inmate appealing from his commitment as a sexually dangerous person. We also conclude that G. L. c. 261, § 27D, governs the appeal from denied requests for fee waivers and remand the matter to the single justice of the Appeals Court for a determination as to the timeliness of De'Amicis's appeal.

1. *Procedural background.* On February 13, 2006, after a jury-waived trial, a judge in the Superior Court found that De'Amicis was a sexually dangerous person and committed him to the treatment center for an indeterminate period under G. L. c. 123A, § 14 (*d*). On February 16, 2007, De'Amicis filed a motion to enter his appeal in the Appeals Court without prepayment of fees. The motion was accompanied by an affidavit

---

[1]Only a handwritten note denying the motion is included in the record. The record does not contain any findings or reasons supporting the denial, and it does not appear that any were made. This is contrary to the requirements of G. L. c. 261, §§ 27C (4) and 27D. These sections provide in relevant part that if a court denies a request for a waiver of fees filed by a person claiming to be indigent, the court is to prepare and issue written findings and reasons justifying the denial within three days after receiving notice of the appeal.

of indigency that stated that he was "presently in custody at the Massachusetts Treatment Center at Bridgewater" and had been "represented by the Committee for Public Counsel Services throughout the adjudication of [his] case."[2] Attached to the affidavit was an "inmate transaction report" showing a six-month average balance of $1,708.22 in his account at the treatment center. On February 16, a single justice in the Appeals Court denied the motion, ruling that the "appeal shall be entered upon the payment of the $300.00 filing fee on or before 9 MAR 07."[3] On March 6, 2007 (eighteen days after the denial of his motion), De'Amicis filed a notice of appeal. We granted his application for direct appellate review.

2. *Applicable statutes.* General Laws c. 261, §§ 27A-27G, and § 29, govern requests by indigent individuals for, among other things, the waiver of certain costs and fees incident to civil and criminal litigation, including court filing fees for civil cases and the fees for docketing civil appeals. Section 27A defines the terms applicable to §§ 27A-27G, and includes a definition of the term "[i]ndigent." Section 27B provides, in relevant part, that "[u]pon or after commencing or answering to any civil, criminal or juvenile proceeding or appeal in any court . . . any party may file with the clerk an affidavit of indigency and request for waiver, substitution or payment" of the fees. Section 27C sets forth a procedure for processing fee waiver requests. Section 27D governs the appeal process in "any case where the court denies a request for waiver, substitution or payment by the commonwealth of fees and costs, pursuant to [§ 27C] or any other provision of law."[4]

Sections 27A-27G were originally enacted in 1974, at the same time the Massachusetts Rules of Civil Procedure were promulgated. St. 1974, c. 694, § 3. In their original form, these provisions appeared to provide for fee waivers, substitutions, or

---

[2]The affidavit also stated that a motion for a free transcript of the trial proceedings had been allowed by the trial judge. That motion was brought and granted under G. L. c. 261, § 27C.

[3]The filing fee for the entry of an appeal in the Appeals Court is $300. G. L. c. 262, § 4.

[4]Section 27E concerns repayments of waived fees or costs and deductions from settlements based on parties' recoveries. Section 27F discusses substitute documents, services, and objects available at lower costs; and § 27G addresses payment procedures and expenditure records.

payments for indigent persons only in the trial courts. In 1978, the Legislature directed the Supreme Judicial Court to file a report on fees and indigency standards to assist the effort of making "uniform standards of indigency to be employed by each court in the commonwealth." St. 1978, c. 478, § 337. Thereafter, in 1980, the Legislature amended the provisions of §§ 27A-27G, by, among other things, broadening the applicability of § 27B to include "appeal[s] in any court," thereby enabling indigent persons to obtain waivers of fees and costs for all appeals, civil and criminal. St. 1980, c. 539, § 6.

Under §§ 27A-27G, as they appeared before 1999, the term "indigent" was defined broadly. In 1999, through St. 1999, c. 127, §§ 180-182, the Legislature amended this statutory scheme as part of a series of statutes "modeled after, but . . . more expansive than, the Federal Prisoner Litigation Reform Act of 1995 (PLRA) . . . an act that Congress passed 'with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims.' "[5] *Longval* v. *Superior Court Dep't of the Trial Court*, 434 Mass. 718, 719 (2001) (*Longval*), quoting *Murray* v. *Dosal*, 150 F.3d 814, 816 (8th Cir. 1998), cert. denied, 526 U.S. 1070 (1999). In particular, the Legislature changed the definition of "[i]ndigent" in § 27A by adding a proviso applicable to inmates, and added § 29, which, like the PLRA, refashioned the procedures prisoners must observe when seeking to proceed without the payment of costs in civil actions. Section 29 makes it more difficult for an inmate bringing such an action to be adjudged indigent, by establishing far more rigorous standards for determining indigency than those generally applicable to indigency determinations and set forth in the definition of "[i]ndigent" appearing in § 27A.[6]

Section 29 requires an inmate who commences a civil action

---

[5]Consistent with this purpose, § 29, which was added by the 1999 amendments, specifically provides that "[a]ctions brought by inmates subject to [§ 29 (*a*)] shall include all actions arising out of or resulting from a condition of or occurrence during confinement." G. L. c. 261, § 29 (*c*), inserted by St. 1999, c. 127, § 182.

[6]Section 27A defines "[i]ndigent" (other than an inmate) as "(*a*) a person who receives public assistance under aid to families with dependent children, program of emergency aid for elderly and disabled residents or veterans'

against a State or county agency, official, or employee and who "requests a waiver of filing fees or court costs due to indigency pursuant to [§] 27B," to submit or cause to be submitted certain documentation to the court. Thus, once the inmate makes the waiver request, under § 29 (*a*) the court directs a prison official to file a "copy of a current account statement of the inmate's account and a copy of the inmate's activity sheet for the preceding six months." Section 29 (*b*) then obligates the inmate to file a signed affidavit reporting assets including, but not limited to, "cash, monies in bank accounts, real property, other investments and all assets of a spouse to which the inmate has legal access; income received in the past six months and income expected to be received in the next six months." Once all the required information is filed, "[t]he court shall order the inmate to pay, as a partial payment of any filing fees and court costs, 20 per cent of the preceding six months' average balance in the inmate's account and, thereafter, monthly payments of 10 per cent of the average monthly balance in the inmate's account, until all such fees are paid, provided that the payment amount to be drawn from the inmate's account is equal to or greater than $10." § 29 (*d*) (1). The court must issue this order unless it "finds that the inmate is incapable of making payments under such a plan or if the court determines, at any time, that such order imposes an undue administrative burden upon the court." § 29 (*d*) (2).

3. *Discussion.* Ordinarily, if the language of a statute is plain and unambiguous, it is conclusive as to the legislative intent. See *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837, 839 (1986). "However, time and again we have stated that we should not accept the literal meaning of the words of a statute without

benefits programs or who receives assistance under Title XVI of the Social Security Act or the medicaid program, 42 U.S.C.A. [§§] 1396, et seq.; (*b*) a person whose income, after taxes, is 125 per cent or less of the current poverty threshold established annually by the Community Services Administration pursuant to [§] 625 of the Economic Opportunity Act, as amended; or (*c*) a person who is unable to pay the fees and costs of the proceeding in which he is involved or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter and clothing . . . ." As noted in the text, the 1999 amendments added a special proviso for inmates to this definition, and also a definition of the word "inmate." St. 1999, c. 127, §§ 180-181. The proviso and definition are discussed *infra*.

regard for that statute's purpose and history." *Id.* In sum, "a statute must be interpreted according to the intent of the Legislature ascertained from all its words . . . considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934).

a. *Section 29.* In *Longval, supra* at 721-723, we followed Federal precedent and, applying the rational basis test, held that § 29 (as applied in civil actions) did not violate an inmate's right of access to the courts or to equal protection under either the Massachusetts or Federal Constitution. The question we must answer in this case is a narrower one, whether the indigency determination provisions set out in § 29 apply to an appeal brought by an inmate from his commitment to the treatment center as a sexually dangerous person.

The plain language of § 29 suggests that its provisions do not apply in the circumstances that De'Amicis presents. While De'Amicis is an "[i]nmate," as defined in § 27A, § 29 applies only to an "action" that an inmate "brings" against governmental agencies or officials. An "action" is "an ordinary proceeding in a court of justice [through] which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." Black's Law Dictionary 31 (8th ed. 2004). An "appeal," in contrast, is "undertaken to have a decision reconsidered" by a higher court. *Id.* at 105. Applying these common definitions to De'Amicis, it is clear that he is not bringing an "action" but seeks to bring an appeal of an "action" that the Commonwealth brought against him.

To the extent there is ambiguity whether the requirements of § 29 nonetheless apply to the appeal De'Amicis seeks to bring, that ambiguity is created by the cross-reference to § 29 in the proviso added in 1999 to the definition of "[i]ndigent" in § 27A. The definition of that term (which otherwise would appear readily to include De'Amicis, see note 6, *supra*) concludes with the following language: "but an inmate shall not be adjudged indigent pursuant to [§] 27C unless the inmate has complied with the procedures set forth in [§] 29 and the court finds that the inmate is incapable of making payments under the plan set forth in said [§] 29."

The Commonwealth would have the court interpret this language to mean that in every case in which an inmate is a party, including cases brought against him related or unrelated to his status as an inmate and including appeals, a special and heightened standard of indigency would be applied in connection with § 27D's "waiver, substitution or payment by the commonwealth of fees and costs." Such a reading, however, makes it almost impossible to harmonize the language of the proviso with § 29. It would require that an inmate who is *not* bringing an action "against a state or county agency, official or employee" comply with procedures that by the very terms of the statute in which these procedures appear, see § 29 (*a*), apply only when the inmate *is* bringing such an action. We decline to indorse such a result. See *Commonwealth* v. *Renderos*, 440 Mass. 422, 432-433 (2003), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975) (statutes enacted together to be construed together "to constitute a harmonious whole while consistent with the legislative purpose"); *New England Div. of the Am. Cancer Soc'y* v. *Commissioner of Admin.*, 437 Mass. 172, 180 (2002) (same). Moreover, the Commonwealth's reading is not consistent with the intent the Legislature "considered in connection with the cause" of the 1999 enactment (frivolous inmate lawsuits), the "mischief" to be remedied (virtually free filing of such lawsuits), "and the main object to be accomplished" (discouraging their filing by instituting economic costs for inmates wishing to file them). *Hanlon* v. *Rollins*, *supra* at 447.

In light of its statutory history, a more plausible reading of this statutory cross-reference between § 27A and § 29, one that is consistent with legislative intent, is that the special inmate proviso in § 27A's definition of "[i]ndigent" applies only when the inmate seeks to bring an action covered by § 29, that is, "an action . . . against a state or county agency, official or employee." Where, as here, the inmate does not bring such an action but seeks to commence an appeal in an action brought against him, his indigency status is governed by the general definition of "[i]ndigent" that precedes the inmate proviso.[7]

b. *Section 27D.* The Commonwealth contends that the require-

---

[7]To the extent the dicta in *Commonwealth* v. *Clark*, 67 Mass. App. Ct. 832,

ments of § 27D apply to De'Amicis's appeal, including the requirement that an appeal be filed within seven days of the time the appellant was notified of the denial and of his right to appeal.[8] See *Commonwealth* v. *Lockley*, 381 Mass. 156, 159 (1980) (§ 27D provides exclusive procedure for appealing from denial of request for waiver, substitution, or payment of fees and costs); *Commonwealth* v. *Clark*, 67 Mass. App. Ct. 832 (2006) (applying § 27D in appellate context and deeming appeal from denial of indigency based request for waiver of appellate fees untimely when taken after seven-day period). De'Amicis contends that Mass. R. A. P. 4, as amended, 430 Mass. 1603 (1999), applies. That rule provides for a sixty-day appeal period in civil cases where the Commonwealth is a party. We agree with the Commonwealth.

Rule 4 is a procedural default rule. It governs the time in which appeals must be filed, *"unless otherwise provided by statute"* (emphasis added). Mass. R. A. P. 4. Section 27D provides, "[i]n any case where the court denies a request for waiver, substitution or payment by the commonwealth of fees and costs, pursuant to [§ 27C] or any other provision of law, the applicant may take an appeal as hereafter provided." Here, a court denied De'Amicis's request for the waiver of fees. This circumstance plainly falls within the language of the statute. Cf. *Ben* v. *Schultz*, 47 Mass. App. Ct. 808, 811-812 (1999) (explaining that G. L. c. 231, § 6G, provides for appeal from ruling on attorney's fees and its shorter time period applies to such appeals rather than rule 4 [*a*]).

De'Amicis argues, however, that § 27D does not apply to his case, because he did not bring his appeal under that statute, but rather under Mass. R. A. P. 15 (c), 365 Mass. 859 (1974) (relating to power of single justice to hear and decide motions, and providing that "[t]he action of a single justice may be reviewed by the appellate court"). He further argues that there is no statute that applies to appeals from single justice rulings under rule 15 (c). Therefore, the argument goes, he had sixty days

---

834-835 n.6 (2006), is to the contrary, it is without effect.

[8]De'Amicis does not contend that his appeal was filed within seven days of his receiving notice. Nor does he contend that he was not advised of his right of appeal.

to take his appeal pursuant to rule 4. We disagree. Even viewing his appeal as one brought under rule 15 (c), there is no reason to apply the time period of rule 4 rather than that of § 27D, which specifically applies to appeals in "any case" from the denial of motions for fee waivers. In *Morales* v. *Appeals Court*, 427 Mass. 1009, 1010 (1998), a petitioner made a similar argument when he was denied a free copy of his transcript, claiming he was not appealing pursuant to § 27D. We concluded that, "regardless of how the petitioner characterizes his appeal, he is seeking a free copy of his transcript, and consequently, his request is governed by G. L. c. 261, §§ 27A-27G," and the timing of his appeal is governed by § 27D. *Id.* The same reasoning applies here.

The decision in *Hunt* v. *Appeals Court*, 444 Mass. 460 (2005) (*Hunt*), on which De'Amicis relies, is not to the contrary. In that case, we noted that § 27D lists a variety of appellate routes,[9] depending on the court in which the motion for waiver of fees was denied, but does not explicitly provide a route for the appeal from the denial of appellate fees by a single justice. We held that the appellate routes listed in § 27D were not exclusive, and that the failure to designate a specific appellate route did not mean that no appeal was available. Specifically, we held that when a single justice of an appellate court acts on a fee waiver request in the first instance, the "provisions of the statute are to be read in conjunction with the Massachusetts Rules of Appellate Procedure." *Id.* at 463. In determining to apply the appellate route suggested by rule 15 (c) of those rules (to the Appeals Court in that case), we considered the statutory scheme on the subject, and concluded that the application of the rules did "no violence to the statutory scheme governing the requests." *Id.* at 465. Consequently, the rules appropriately could be used to fill the apparent gap in § 27D.

Here, as in *Hunt*, a single justice of the Appeals Court declined to waive fees, and an appeal to the Appeals Court was the ap-

[9]Section 27D provides that when a District Court judge denies the request, the aggrieved litigant can appeal to the Appellate Division of the District Court; if the matter arises in the Juvenile Court, the appeal is to the Superior Court; and when it arises before the Superior Court, Land Court, Probate and Family Court, or Housing Court, the appeal lies before a single justice of the Appeals Court.

propriate route. There is, however, no gap or silence in the statutory scheme on the matter of the time in which such an appeal, like an appeal from a denial in any other fee waiver denial case, must be filed. Consequently, no reason exists to substitute the conflicting general time limit of rule 4. This is particularly so given the broad language of § 27D ("In any case where the court denies a request . . .") and rule 4's explicit contemplation that it would only apply in the absence of a more specific statutory provision. Further, unlike in *Hunt, supra* at 465, the substitution of rule 4, being contrary to the explicit language in § 27D, would do "violence" to the statutory scheme regulating appeals.[10]

4. *Conclusion.* If De'Amicis did not file his appeal within the seven-day period provided by § 27D, it must be dismissed. *Friedman* v. *Board of Registration in Med.*, 414 Mass. 663, 665-666 (1993) (dismissing appeal for failure to comply with statutory deadline); *Morales* v. *Appeals Court, supra* (Appeals Court correctly dismissed appeal from denial of motion for free transcript for failure to file timely appeal under § 27D); *Commonwealth* v. *Clark, supra* (failure to file appeal from denial of fee waiver within § 27D time period must result in dismissal of appeal). Because the record is devoid of any evidence as to when the defendant received proper notice, the matter is remanded to the single justice of the Appeals Court to determine when De'Amicis was given such notice, and thus whether his appeal was timely under § 27D.

*So ordered.*

---

[10]The 1980 amendment to § 27B, as appearing in St. 1980, c. 539, § 6, which expressly added "appeal" to the list of proceedings in which such waivers could be sought, left no doubt that §§ 27A-27G apply to fee waivers in appellate cases. The reach of § 27D also was broadened by the 1980 amendments. Specifically, its applicability to "any case where the court denies a request for a waiver . . . pursuant to [§ 27C]" was expanded to include denials of such requests made pursuant to § 27C "or any other provision of law."